## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

MACUHEALTH DISTRIBUTION, INC.,

Case No. 2:19-cv-13322

                  Plaintiff,

formerly Circuit Court for
Oakland County Michigan
Case No. 2019-176739-CB

v.

RAQUEL DAVIS,

                  Defendant.

_____/

### DEFENDANT RAQUEL DAVIS'S NOTICE OF REMOVAL

Defendant, RAQUEL DAVIS, by and through undersigned counsel, hereby removes Case No. 2019-176739-CB from the Circuit Court of Oakland County, to the United States District Court for the Eastern District of Michigan, under 28 §§1332, 1441, and 1446. As grounds for removal, Defendant states the following:

1.    On or about June 19, 2019, Plaintiff MACUHEALTH DISTRIBUTION INC. filed a Complaint with the Oakland County Circuit Court. A copy of the Complaint with Exhibits is attached hereto. (Attachment No. 1.) A copy of the Register of Actions for Case No. 2019-176739-CB from the Circuit Court of Oakland County is also attached hereto. (Attachment No. 2.)

2.    Defendant RAQUEL DAVIS was served with the Complaint on October 12, 2019. (Attachment No. 2.)

1

3.     The Complaint purports to assert three causes of action, including (1) breach of contract, (2) unfair competition, and (3) unjust enrichment, along with allegations of tortious interference with business contracts, relationships, and expectancies; Plaintiff also seeks declaratory and injunctive relief. (Pl's Complaint at ¶¶1-39.)

4.     The relief Plaintiff MACUHEALTH DISTRIBUTION INC. seeks from Defendant RAQUEL DAVIS includes, *inter alia* (a) compensatory damages, "exceeding $25,000," in an unspecified amount; (b) unspecified "compensatory and exemplary damages, and "monetary damages as may be proven at trial." (Pl's Complaint at ¶¶1-39.)

## DIVERSITY JURISDICTION UNDER 28 U.S.C. §1332(a)

5.     This Court has diversity jurisdiction under 28 U.S.C. §1332(a), because there is complete diversity of citizenship between Plaintiff and Defendant RAQUEL DAVIS, and that more than $75,000, exclusive of interests and costs, is at stake.

6.     Plaintiff MACUHEALTH DISTRIBUTION INC., a Michigan Corporation, alleges that it is a citizen of Michigan, and that its principal place of business is Birmingham, Michigan. (Pl's Complaint at ¶1.)  For purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every foreign state by which it has been incorporated and of the State or foreign state

where it has its principal place of business...." 28 U.S.C. §1332(a)(1).

7.     Defendant RAQUEL DAVIS is a citizen of California, and her primary residence is Orangevale, California.

8.     In its Complaint, Plaintiff requests unspecified compensatory and exemplary[1] damages, along with a permanent injunction[2] from Defendant. Specifically, Plaintiff MACUHEALTH DISTRIBUTION INC. alleges that Defendant RAQUEL DAVIS took business and proprietary information from Plaintiff, and caused "substantial damage" to Plaintiff's "hard-earned" "competitive advantage and reputation" in the "highly competitive" eye care industry.     (Complaint at ¶¶16, 26, 30.)     While Defendant denies the allegations in the Complaint, and denies any liability whatsoever, the amount in controversy, more likely than not, exceeds $75,000.

---

[1]     Exemplary damages are akin to punitive damages. 22 AM. JUR.2d *Damages* § 544 (2006). In determining the jurisdictional amount, "punitive damages must be considered... unless it is apparent to a legal certainty the such cannot be recovered." *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 572 (6th Cir. 2001). Michigan law provides that exemplary damages are allowed for tortious conduct by a defendant. *Kewin v.*

[2]     "[I]t is well-settled that the amount in controversy is to be measured for subject matter jurisdiction purposes by the value of the right that the plaintiff seeks to enforce or to protect against the defendant's conduct or the value of the object that is the subject matter of the action." 14AA CHARLES ALLEN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3708 (4th ed. 2009).

Thus, the amount in controversy satisfies the jurisdictional amount, pursuant to 28 U.S.C. §1332(a).

**ALL PROCEDURAL REQUIREMENTS SATISFIED UNDER 28 U.S.C. §1446(a)**

9.      Pursuant to 28 U.S.C. §1446(a), a true and correct copy of all of the process, pleadings, orders, and documents from the State Court Action that have been served upon Defendant RAQUEL DAVIS are being filed with this Notice of Removal.   Defendant RAQUEL DAVIS will file true and legible copies of all other documents on file in the State Court Action, as well as a certification, pursuant to Local Rule 81.1.

10.      This Notice of Removal has been filed within 30 days of the date that Defendant was served with the Summons and Complaint in this matter. Thus Removal is timely under 28 U.S.C. §1446(b).

11.      Venue is proper in this Court under 28 §§ 1441(a), and 1446 (a), because the United States District Court for the Eastern District of Michigan is the federal judicial district embracing the Circuit Court of Oakland County, Michigan where the State Court Action was filed.

**CONCLUSION**

By this Notice of Removal, Defendant RAQUEL DAVIS does not waive any objections it may have as to service, jurisdiction or venue, or any other defenses or objections it may have to this action.  Defendant RAQUEL DAVIS

intends no admission of fact, law or liability by this Notice, and expressly reserves all defenses, motions, and/or pleas.

Accordingly, Defendant RAQUEL DAVIS respectfully requests that the case, *styled MACUHEALTH DISTRIBUTION INC. v. RAQUEL DAVIS (MEIRA)*, Case No. 2019-176739-CB, be removed from the Oakland County Circuit Court to the United States District Court for the Eastern District of Michigan.

Dated November 12, 2019

Respectfully submitted,

*John H. DeYampert Jr.*
/s/ _____
JOHN H. DEYAMPERT JR. (P65626)
SHONNA L. HAWKINS (P74470)
*Counsel of Record*
DeYAMPERT & HAWKINS
DEYAMPERT LAW COMPANY PLLC
Trial Attorneys
25240 Lahser, Suite 1
Southfield, MI 48033
Tel: (313) 583-9529
shawkins@deyampertlawco.com
jdeyampert@deyampertlawco.com
deyampertlawco@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2019, I electronically Defendant's Notice of Removal with the Clerk of the Court using the CM/ECF system; I hereby certify that on November 12, 2019, I filed a Copy of Defendant's Notice of Removal, via the Circuit Court's MFile electronic filing system, which will send an emailed copy and notification to the following:

John W. Henke, III, Esquire
251 Merrill Street, Suite 212
Birmingham, MI 48009
(248) 647-8590
jwhenke@aol.com

Oakland County Circuit Court
1200 N. Telegraph Road, Dept. 404
Pontiac, MI 48341

/s/ John H. DeYampert Jr.
_____
JOHN H. DEYAMPERT JR.

# Attachment No. 1

This case has been designated as an eFiling case. To review a copy of the Notice of Mandatory eFiling visit www.oakgov.com/efiling.

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

MACUHEALTH DISTRIBUTION, INC.,

     Plaintiff,

v.

                             2019-176739-CB

RAQUEL DAVIS (MEIRA),      Case No. 2019-     -CB

     Defendant.                JUDGE MARTHA D. ANDERSON

---

JOHN W. HENKE, III (P39294)
Of Counsel Ishbia & Gagleard, P.C.
Attorney for Plaintiff
251 Merrill Street, Suite 212
Birmingham, Michigan 48009
(248) 647-8590
jwhenke@aol.com

---

## COMPLAINT

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this complaint that is either pending or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a judge in this Court.

             /s/ John W. Henke, III
             JOHN W. HENKE, III (P39294)

This matter meets the statutory requirements to be assigned to the business court. MCR 2.112(O)(1).

             /s/ John W. Henke, III
             JOHN W. HENKE, III (P39294)

NOW COMES the above-named Plaintiff herein, MacuHealth Distribution, Inc. ("MacuHealth"), by its attorney, John W. Henke, III, and for its Complaint for Monetary Damages and/or Equitable Relief as against the Defendant, states as follows:

## PARTIES, JURISDICTION AND VENUE

1.     The above-named Plaintiff herein, MACUHEALTH DISTRIBUTION, INC., is a Michigan limited liability company and conducts business as MacuHealth (collectively referred to as "**MacuHealth**"), with its principal place of business located in the City of Birmingham, County of Oakland, State of Michigan.

2.     The above-named Defendant herein, Raquel Davis (Meira) ("**Davis**"), is an individual residing in California,

3.     Jurisdiction as to the Defendant is proper in Michigan and in this Court pursuant to the limited personal jurisdiction provisions found at MCL 600.705(1) and/or (2) and MCL 600.715(1) and/or (2) and/or **pursuant to an agreement of the Parties to submit disputes between them to the jurisdiction in Michigan, as further allowed pursuant to MCL 600.745(2)**. See Exhibit A- Employment Agreement."

4.     Further pursuant to the Agreement (**Exhibit A**) entered into by and/or between and/or amongst the Parties, Defendant Davis consented to and/or agreed as part of the Agreement, entitled "**Governing Law**", that:

> "**This Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of Michigan, without giving effect to the principles of the conflicts of law thereof.**"

5.     Plaintiff MacuHealth requests for monetary damages and/or equitable relief is/are a request(s) that arises/arise out of the Agreement (**Exhibit A**) entered into by and/or between and/or amongst the Plaintiff and the Defendant.

6.     This Court also has jurisdiction over this matter given that the Plaintiff and Defendant agreed by the express terms of the contract that all disputes arising with respect to the transactions contemplated within the Agreement (**Exhibit A**) therein shall be governed by

2

Michigan law and shall be instituted in any state or federal court of competent jurisdiction sitting in the State of Michigan.

7.      This Court has jurisdiction over this matter as the amount in controversy exceeds $25,000.00, exclusive of interest, court costs and/or attorney fees, and that the Plaintiff and Defendant agreed by contract that all disputes arising with respect to the transactions contemplated within the Agreement (**Exhibit A**) therein shall be governed by Michigan law.

8.      This case qualifies for Business Court assignment, and this matter should be identified as Business Court eligible and assigned to the Business Court pursuant to MCL 600.8031(1)(a) & (b) and MCL 600.8035 and LAO 2013 – 13.   Further, pursuant to MCL 600.8031(1)(c)(i) and/or (ii) and MCL 600.8031(2)(c) & (d), this case is eligible for the Business Court assignment because one or more of the parties are business enterprises **and** this case involves contractual agreements related thereto **and** commercial transactions related thereto.

## COMMON ALLEGATIONS

9.      Plaintiff MacuHealth herein incorporates by reference Paragraphs 1 through 8, as well as the entirety of this Complaint, inclusively, as if all such paragraphs were specifically repeated herein paragraph by paragraph and word for word.

10.    Plaintiff MacuHealth and Defendant Davis entered into the Agreement dated 6/22/2015, (**Exhibit A**), whereby Plaintiff MacuHealth and Defendant Davis agreed:

> "1. **Appointment.**   **Company hereby appoints Employee as its Sales Representative to solicit sales for its Products for customers located in the Territory and Employee hereby accepts such appointment, in accordance with the terms and conditions set forth herein. In consideration of the employment, employee hereby agrees to exert his/her best efforts during the term of this Agreement to vigorously promote the sale of the Products in the Territory.**
>
> **2. Term. The employment of the Employee, pursuant to this Agreement, shall commence on the date first written above and shall continue on a year-to-year basis unless and until terminated as provided for in this Agreement".**

11.    The Plaintiff MacuHealth and Defendant Davis **UNCONDITIONALLY AND IRREVOCABLY AGREED** in the Agreement, paragraph 11 entitled "**Governing Law**", that:

> "**11. Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan, without giving effect to the principles of conflicts of law thereof."**

12.    The Plaintiff MacuHealth and Defendant Davis UNCONDITIONALLY AND IRREVOCABLY AGREED in the Agreement, paragraph 21 entitled "Venue and Jurisdiction, that:

> "**21. Venue and Jurisdiction.  Each of the parties to this Agreement agree that this Agreement is made in Michigan and each of the parties submit to the non-exclusive jurisdiction of any state or federal courts sitting in Michigan with respect to any action or proceeding arising out of or relating to this Settlement Agreement may be heard and determined in such court and expressly submits to the personal jurisdiction and venue of such court for the purposes of this Settlement Agreement and expressly waives any claim of improper venue and any claim that such courts are an inconvenient forum."**

13.    Pursuant to Michigan law, and in line with the realities of business/economic relationships in today's worldwide economy, Michigan law recognizes that parties to an Agreement may agree to what state's laws will apply and/or govern contractual relationships entered into between parties.  See *Turcheck v Amerifund Financial, Inc.*, 272 Mich App 341, 345, 348; 725 NW2d 689 (2006)

14.    Also under Michigan law as well as California law, in what is otherwise known as a "forum selection clause", parties to an Agreement can agree to what particular jurisdiction to submit themselves to in which to hear and conduct disputes between the contracting parties. *Turcheck, supra;*  See also *Olinick v BMG Entertainment*, 138 Cal App 4th 1286, 1294 (2006).

15.    Pursuant to the Agreement entered into between the Plaintiff MacuHealth and Defendant Davis, it is unconditionally, unambiguously clear that the Parties to this Agreement

4

intended and agreed to a "forum selection clause", wherein the applicable federal laws and the laws of the State of Michigan would be utilized to construe and/or enforce the Agreement.

16.     Since its conception, MacuHealth has built upon its hard-earned goodwill and its long-established business relationships with doctors and retail customers, clients and employees to become one of the most recognized products and distributor of specially formulated supplements to aid in the prevention of macular degeneration.  The supplements business is a highly competitive business in which a company's advantage, stability and profitability is substantially dependent upon, among other things, its ability to develop and maintain its confidential and/or proprietary information, generate and analyze quality research and market information, and cultivate and maintain highly trained and uniquely skilled employees.

17.     Training of the MacuHealth employees of its specialty products, including in the areas of sales, pricing, etc., continues throughout an individual's employment with MacuHealth, including on-the-job training, training in the understanding and use of all the MacuHealth products and training in the understanding and use of MacuHealth's unique and proprietary analytics, databases and spreadsheets vital to employees performing their sales and pricing and medical advantages, and other training provided and/or funded by the company.

18.     Employees working within MacuHealth's services and specialty products are entrusted with MacuHealth's confidential and proprietary information, including, but not limited to: (i) MacuHealth's unique and proprietary medical information, analytics, databases and spreadsheets; (ii) MacuHealth's specified risk tolerances; (iii) MacuHealth's sales and marketing, practices and strategies; (iv) marketing and product plans; (v) business strategies; (vi) financial information and forecasts; (vii) personnel information; (viii) customer and vendor lists and/or identities; (ix) trade secrets; and (x) as further and more completely defined in attached **Exhibit A** (collectively referred to as the **"Proprietary Information"**).

5

19.     To protect its legitimate business interests, among other things, MacuHealth requires, as a condition of employment, that employees enter into an Employment Agreement ("**Agreement**") (**Exhibit A**) that prohibit them from using and disclosing MacuHealth's Proprietary and Confidential Information.

20.     This agreement regarding confidential/proprietary information, pursuant to the terms of the Agreement, continues to be in full force and effect upon and/or beyond the termination of that employment relationship.  Further, pursuant to Paragraph 7 of the Agreement, p. 3 (**Exhibit A**), Defendant agreed:

> "**7.  Return of Property.**  Upon any termination of this Agreement and the Employee's employment hereunder, the Employee shall at once deliver to the company all books, reports ,documents, effects, money, securities, computers, tablets, phones, or other property belonging to the Company for which the Company is liable to others that are in the possession, charge, control, or custody.  The Employee further shall return to or otherwise inform the Company of all means of access to any account, database, or computer system of the Company (whether personal to the Employee or public, published or unpublished, standard or backdoor, including all account names, passwords, access codes, unique personal identification numbers, any code kept secret and any other means allowing employee access to Company's data or documentation)"

21.     Pursuant to Paragraph 17 of Agreement, page 5, (**Exhibit A**), <u>**Defendant Davis agreed and stipulated that any violation of the Agreement by her would cause irreparable harm to MacuHealth and MacuHealth would be entitled to enforce Defendant's performance of the Restrictive Covenants of the Agreement through injunctive relief**</u>, as stated:

> "**17. Injunctive Relief.** The Parties hereto agree that a breach of any of the promises or agreements contained herein will result in irreparable and continuing damage to the Company and the Employee for which there will be no adequate remedy at law, and the Company or the Employee shall be entitled, in addition

6

to all other remedies, to injunctive relief and such other relief as
may be proper (including monetary damages, if appropriate)."

## COUNT I-BREACH OF CONTRACT

21.     Plaintiff hereby restates and realleges paragraphs 1 through 20 as though fully set
forth herein.

22.     As a condition of her employment with MacuHealth, Davis executed the
Agreement with MacuHealth. (**Exhibit A**)

23.     The Agreement represents a valid and enforceable contract/agreement between
MacuHealth and Davis.

24.     At the time of her hiring, Ms. Davis was the highest paid base salary representative
in the Company.

25.     In August 2018, Defendant Davis resigned from the Company.

26.     In downloaded emails to herself on August 20, and 21, 2018 two days prior to her
resignation, Ms. Davis misappropriated:

- The 2016, 2017 and 2018 excel spreadsheets containing MacuHealth's customer
  names, addresses and detailed sales information, including unit sales, year-to-date
  comparisons, and fiscal year breakdowns;

- The lists of over two hundred (200) MacuHealth patients identified as "Retail
  Consumers". These "Territory Sales by Month' reports which she emailed to
  herself contain individual consumers' names, addresses, email address, purchase
  history, discount information and client coding information;

- MacuHealth territory monthly sales reports from 2015 – 2018;

27.     Ms. Davis is now with Optos, an optical retina imaging company based in
California, which operates in the same competitive market of eye care professionals as
MacuHealth.

7

28.     As described fully above, pursuant to the Agreement, Davis agreed to abide by certain obligations, including, but not limited to, non-disclosure obligations, both during and after her employment with MacuHealth.

29.     Davis' restrictive covenants contained in the Agreement are enforceable.  The restrictive covenants are necessary to protect MacuHealth's Proprietary Information, relationships with unique and highly skilled employees, and other reasonable competitive business interests, are narrowly drawn, are limited to a reasonable duration and are reasonable in all aspects, including as to geographical area and the type of conduct restricted.

30.     As a direct and/or indirect and/or proximate cause and/or result of the actions of the Defendant Davis, Davis' breaches of her Agreement have caused, and her continued breaches will continue to cause, MacuHealth substantial damage.  In addition, MacuHealth also has suffered a loss of and/or harm to its competitive advantage and reputation, loss of the confidentiality of its proprietary information and/or loss of fair competition.

## COUNT II – UNFAIR COMPETITION

31.     Plaintiff hereby restates and realleges paragraphs 1 through 30 as though fully set forth herein.

32.     Defendant's action(s) and conduct described above amount to deceptive and unlawful acts that have damaged MacuHealth's business.  Defendant's systematic raiding and/or attempted raiding of MacuHealth's vendor customer lists, sales and territory information, and product lists and other unlawful conduct should be enjoined under the tort of unfair competition.

33.     Defendant knew or should have known that her actions would damage MacuHealth's contractual relationships and business expectancies.

34.     As a direct and/or indirect and/or proximate cause and/or result of the actions of the Defendant Davis, Davis' actions have caused, and will continue to cause, MacuHealth substantial

damage.  In addition, MacuHealth also has suffered a loss of and/or harm to its competitive advantage and reputation, loss of the confidentiality of its proprietary information and/or loss of fair competition.

## COUNT III-UNJUST ENRICHMENT

35.     Plaintiff hereby restates and realleges paragraphs 1 through 34 as though fully set forth herein.

36.     Defendant has tortuously, intentionally, and willfully interfered with MacuHealth's contractual and business relationships and/or expectancies for her or her employer's own benefit, without right or justification, at the expense of MacuHealth.

37.     Defendant Davis' breach of the Agreement, is a benefit to which she, and on behalf of the employer Optos, were not entitled to and which resulted in an inequity to MacuHealth.

38.     Defendant has been unjustly enriched and have otherwise improperly benefited from the Defendant's unlawful and tortious activity.

39.     As a direct and/or indirect and/or proximate cause and/or result of the actions of Defendant Davis, Davis' actions have caused, and will continue to cause, unfair and severe detriment and damage to MacuHealth.  Under the circumstances of this case, it would be unjust to allow Defendant to retain any of this benefit from the improperly solicited employees without payment to MacuHealth.

## REQUESTED RELIEF

**WHEREFORE,** Plaintiff MacuHealth hereby requests entry of a Judgement in its favor and against Defendant, and further requests that the Court:

A.     Enter an Order that temporarily and/or preliminary and/or  permanently enjoins, restrains and prohibits, directly or indirectly, Defendant and those persons in active concert or participation with her from, directly or indirectly:

1.  Violating any of the restrictive covenants contained in the Defendant Davis' Employment Agreement;

2.  Soliciting, communicating with and/or contacting any person employed by or under contract with MacuHealth who works within its sales and distribution for purposes of creating an employment relationship, contractor relationship, or other association as between those individuals and any other person, business or entity, including, without limitation, the Defendant;

3.  Contacting and/or communicating with any customers, vendors and clients, and any person employed by or under contract with MacuHealth who work within MacuHealth's sales and distribution department;

4.  Tortuously interfering with MacuHealth's contracts and/or business relationships and/or expectancies with employees or consultants.

B.   Enter an Order that the above-requested injunctions/injunctive relief be binding upon the Defendant and her respective employer, Optos and any person(s) in active concert or participation with Defendant;

C.   Award MacuHealth an amount equal to Defendant's unjust enrichment;

D.   Award MacuHealth such monetary damages as may be proven at trial, including without limitation, compensatory and exemplary damages, plus interest and costs;

E.   Award MacuHealth its attorney's fees and costs incurred in prosecuting this action; and

F.   Award MacuHealth such other and further relief as this Court deems just and equitable.

Respectfully submitted,

/s/ John W. Henke, III
John W. Henke, III (P39294)
Attorneys for Plaintiff
251 Merrill St., Suite 212
Birmingham, MI 48009
(248) 647-8590
(248) 647-8596 (fax)
jwhenke@aol.com

Dated: June 19, 2019

10

# EXHIBIT "A"

## EMPLOYMENT AGREEMENT

This Employment Agreement ("Agreement") made as of the 22nd day of June, 2015 (the "Effective Date"), by and between **MACUHEALTH DISTRIBUTION, INC.**, a Michigan corporation (hereinafter referred to as "Company") and Raquel Davis (Meira), whose address is 1727 Independence Blvd., Apt 107, Salinas, CA 93906 hereinafter referred to as "(Employee")

WHEREAS, Company is engaged in the sale and distribution of certain patented supplements for the prevention of age-related macular degeneration and other products for eye health (hereinafter referred to as "Products") as further defined in Exhibit A; and

WHEREAS, Employee desires to be appointed as a Sales Representative for the Products in the Territory, as defined in Exhibit B, upon the terms and conditions set forth herein; and

WHEREAS, Company is willing to appoint Employee as its Sales Representative for the Products in the Territory upon the terms and conditions as set forth herein.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. **Appointment.** Company hereby appoints Employee as its Sales Representative to solicit sales for its Products for customers located in the Territory and Employee hereby accepts such appointment, in accordance with the terms and conditions set forth herein. In consideration of this employment, Employee hereby agrees to exert his/her best efforts during the term of this Agreement to vigorously promote the sale of the Products in the Territory.

2. **Term.** The employment of the Employee, pursuant to this Agreement, shall commence on the date first written above and shall continue on a year-to-year basis unless and until terminated as provided for in this Agreement.

3. **Compensation and Benefits.** The Employee's compensation and benefits will be as set forth in **Exhibit C** and shall be attached hereto and made a part of this Agreement as more specifically set forth herein. All payments made by the Company to Employee pursuant to the terms of this Agreement, shall be subject to all applicable federal, state and local withholding, payroll and other similar taxes. Company hereby reserves the right, in its sole discretion, to modify the Commission Plan as set forth in Exhibit C. In any event, compensation and benefits shall be reviewed on an annual basis and any modifications shall be set forth in Exhibit C.

4. **Non-Disclosure, Intellectual Property, and Inventions:**

   (a)    The Employee acknowledges that the Confidential Information (defined below) relating to the business of the Company that the Employee will obtain during the course of his/her employment by the Company and his/her performance under this Agreement are the property of the Company. The Employee agrees that he/she will not disclose or use at any time

_RD_ Initial

any Confidential Information, other than in the ordinary course of business of the Company to promote the interests of and pursuant to the Company's policy, without the prior written consent of the Company. The Employee agrees to deliver to the Company at the end of his/her employment, or at any other time that the Company may request, all memoranda, notes, plans, records, diskettes, tapes, and other storage media, documentation, and other materials (and copies thereof) containing Confidential Information relating to the business of the Company. no matter where such material is located and no matter what form the material may be in, that the Employee may then possess or have under his/her control. If requested by the Company, the Employee shall provide to the Company written confirmation that all such materials have been delivered to the Company or have been destroyed. The Employee shall take all appropriate steps to safeguard Confidential Information and to protect it against disclosure, misuse, espionage, loss, and theft.

(b)    For purposes of this Agreement, "Confidential Information" shall mean trade secrets, confidential or proprietary information, and all other knowledge, know-how, information, documents, or materials owed, developed, or possessed by the Company, whether in tangible or intangible form, pertaining to the business of the Company or any customer thereof, known or intended to be known only to employees of the Company or other persons in a confidential relationship with the Company, including but not limited to marketing and advertising plans, research and development data, project data, assignments of individual employees, testing and evaluation procedures, cost data and techniques, data bases, designs, models, operating procedures, knowledge of the organization (including pricing and sales policies, techniques, and concepts), trade shows (including prices, costs, sales, or content), details of joint venture or sponsorship agreements, knowledge of strategic or marketing plans for future events, direct marketing, promotion strategies and plans, marketing strategies and plans, shows, conferences or publications, processes, techniques, contracts, financial information or measures, business methods, future business plans, package design, retail design, field marketing outsourcing, customers (including identities of customers and prospective customers, identities of individual contacts as business entities that are customers or prospective customers, preferences, businesses, or habits), personnel and employee files and records, business relationships, training/seminars, and other information owned, developed, or possessed by the Company; provided, however, that Confidential Information shall not include (i) information which, prior to the time of disclosure by the Company, was known to the Employee as evidenced by his/her written records, (ii) information that, at the time of disclosure to the Employee, was published or known publicly or was otherwise in the public domain, (iii) information which, after disclosure to the Employee, is published or becomes publicly known or otherwise becomes part of the public domain other than as a result of a breach of this Agreement, or (iv) information which is disclosed to the Employee in good faith by a third party who is not under obligation of confidence or secrecy to the Company at the time such third party discloses the information to the Employee.

5.    <u>Covenant Not to Compete</u>. Employee agrees that for so long as he/she is employed by the Company, Employee shall not, for any reason whatsoever, directly or indirectly solicit, seek, accept employment, or accept orders, for his/her own account or for the account of others for services which compete with the Company within the or to or on behalf of any of the persons or businesses which the Company conducts business and which provides services as of

-2-

the date of this Agreement or the date upon which such Employee's interest terminates. Employee acknowledges that a violation of the provisions of this section will cause irreparable injury to the Company and that there is no adequate remedy at law for such violation, and Employee therefore agrees that the Company shall have the right, in addition to any other remedies available to it, at law or in equity, to immediately enjoin the violating Employee, as the case may be, upon application to a court of competent jurisdiction for the issuance of an *ex-parte* restraining order, preliminary injunction or permanent injunction prohibiting such person from violating this provision.

6.  **Termination**.  Employee's employment and this Agreement may be terminated at any time in the following ways:

(a)   **Termination Due to Employee's Death or Disability**.   Employee's employment and this Agreement will terminate if Employee dies or suffers physical incapacity or mental incompetence.  For the purpose of this Agreement, Employee shall be deemed to have suffered physical incapacity or mental incompetence if Employee is unable to perform the essential functions of his/her job with reasonable accommodation as determined in the sole discretion of Mr. Frederic Jouhet or the Board of Directors.  Any accommodation will not be deemed reasonable if it imposes an undue hardship on the Company.  If this Agreement and Employee's employment terminate due to the death or disability of Employee, Employee will not be entitled to any payments after the date of his/her death or disability.

(b)   **At the Parties Option**.  Employee or Company may terminate this Agreement for any reason by giving at least thirty (30) days' written notice to the other party, provided that the Company may waive Employee's notice requirement in its sole discretion.  In the event of the Employee's termination as set forth in this subparagraph, the Company will have no obligation to pay Employee after his/her last day of active employment any other payments including but not limited to severance or other benefits.

The Employee acknowledges that, upon termination of his/her employment, he/she is entitled to no other compensation, severance, or other benefits other than those specifically set forth in this Agreement.  This relationship is an at-will relationship and can be terminated for any reason subject to the terms and conditions of this Agreement.

7.   **Return of Property**.   Upon any termination of this Agreement and the Employee's employment hereunder, the Employee shall at once deliver to the Company all books, reports, documents, effects, money, securities, computers, tablets, phones, or other property belonging to the Company for which the Company is liable to others that are in the Employee's possession, charge, control, or custody.  The Employee further shall return to or otherwise inform the Company of all means of access to any account, database, or computer system of the Company (whether personal to the Employee or public, published or unpublished, standard or backdoor, including all account names, passwords, access codes, unique personal identification numbers, any code kept secret and any other means allowing employee access to Company's data or documentation).



8.    **Definition.**  In this Agreement the word "person" shall include individuals, partnerships, associations, trusts, unincorporated organizations, and corporations and vice versa.

9.    **Termination of Prior Agreements; Entire Agreement.**  Upon the effective date of this Agreement, any employment agreement between the Employee and Company shall terminate and shall be of no further force or effect, and the Employee will be entitled to no further consideration or compensation thereunder.   This Agreement constitutes the entire agreement between the Employee and the Company with respect to the subject matter hereof and cancels and supersedes any prior understandings and agreements between the Employee and the Company with respect thereto.

10.    **Severability and Construction.**  If any provision of this Agreement is determined to be invalid or unenforceable in whole or in part, such invalidity or unenforceability shall attach only to such provision or part thereof and the remaining part of such provision and all other provisions hereof shall continue in full force and effect.  Moreover, if one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad as to scope, activity, subject or otherwise so as to be unenforceable at law, such provision or provisions shall be construed by the appropriate judicial body by limiting or reducing it or them so as to be enforceable to the maximum extend compatible with the applicable law as it shall appear.

11.    **Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan, without giving effect to the principles of conflicts of law thereof.

12.    **Review of Agreement.**  The Employee acknowledges that he/she has been advised to obtain an attorney regarding a review of this Agreement and has had an opportunity to obtain legal advice in connection with this Agreement.

13.    **Assignment of Rights.**  The Employee shall not have the right to assign this Agreement (it being understood that this is a personal service contract requiring the services of the Employee personally) or any of his/her rights or obligations hereunder, including any subcontracting of obligations hereunder, without the prior written consent of the Company. The rights and obligations of the Company under this Agreement may be assigned by the Company and shall inure to the benefit of, and shall be binding upon, the successors and assign of the Company.

14.    Employee hereby acknowledges that he/she has been advised to obtain counsel and has had counsel review this Agreement prior to his/her execution of this Agreement.

15.    **Notices:**

(a)    Any notice required or permitted to be given under this Agreement will be given in writing by personal delivery, registered mail, or by facsimile.

-4-

RD

If to the Company:

        Macuhealth Distribution, Inc.
        Attn:  Mr. Frederic Jouhet
        280 North Old Woodward, Suite 107
        Birmingham, MI 48009

With a copy to:

        A. Stuart Tompkins, Esq.
        Sullivan, Ward, Asher & Patton, P.C.
        25800 Northwestern Highway, Suite 1000
        Southfield, MI   48037-0222

If to Employee:

        Raquel Davis (Meira)
        1727 independence Blvd., Apt 107
        Salinas, CA 93906

    (b)    Any termination by the Company or the Employee shall be communicated by a written notice of termination to the other party hereto delivered in accordance with this Agreement.  Such notice shall indicate the specific termination provision in this Agreement relied upon.

    16.    **Waiver; Amendment**.  No provision of this Agreement shall be amended, modified, waived, or discharged unless the modification, waiver, or discharge is agreed to in writing and signed by the Employee and by an officer of the Company (other than the Employee) specifically authorized to do so by the Board of Directors.  No waiver by either party of any breach of, or compliance with, any condition or provision of this Agreement by the other party shall be considered a waiver of any other condition or provision or of the same condition or provision at another time.

    17.    **Injunctive Relief**.  The parties hereto agree that a breach of any of the promises or agreements contained herein will result in irreparable and continuing damage to the Company and the Employee for which there will be no adequate remedy at law, and the Company or the Employee shall be entitled, in addition to all other remedies, to injunctive relief and such other relief as may be proper (including monetary damages, if appropriate).

    18.    **Captions**.  The captions of the sections of this Agreement are for convenience of reference only and in no way define, limit, or affect the scope of any section of this Agreement.

    19.    **Construction**.  The language of all parts of this Agreement shall in all cases be construed as a whole according to its fair meaning and not strictly for or against either party.

RD

20.    **Counterparts**.  This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument.

21.    **Venue and Jurisdiction**.  Each of the parties to this Agreement agree that this Agreement is made in Michigan and each of the parties submit to the non-exclusive jurisdiction of any state or federal courts sitting in Michigan with respect to any action or proceeding arising out of or relating to this Settlement Agreement may be heard and determined in such court and expressly submits the personal jurisdiction and venue of such court for the purposes of this Settlement Agreement and expressly waives any claim of improper venue and any claim that such courts are an inconvenient forum.

22.    **Provisions That Operate Following Termination**.    Notwithstanding any termination of this Agreement and the Employee's employment hereunder for any reason whatsoever, the provisions of Section 6 of this Agreement and any other provision of this Agreement necessary to give efficacy thereto shall continue in full force and effect following such termination.

**MACUHEALTH DISTRIBUTION, INC.**

By: _____

Its: _____ *U P S a l e s & N B D* _____

**EMPLOYEE** _____

AN03-121836/1645609v3

-6-

RD

## EXHIBIT A

## PRODUCTS

1.    Macuhealth® with LMZ3

2.    SightRisk™ USA

3.    MacuAreds with Zinc Supplement


[Company hereby reserves the right to add any additional Product as it, in its sole discretion, may determine.  In the event Company shall add any Products, this Exhibit A shall be modified.]

Initial

## EXHIBIT B

### TERRITORY

Northern California, Hawaii, and Nevada (excluding greater Las Vegas)

Northern California includes all counties north of and including:
Monterey, Kings, Tulare and Inyo counties.

Initial

## EXHIBIT C

### COMPENSATION AND BENEFITS

1. <u>Base Salary</u>: $62,000.00 (sixty two thousand) per year

2. The 2015 Commission Plan rates are as set forth below. The Company, in its sole discretion, reserves the right to modify this Commission Plan at any time during the Agreement provided that Company shall give Employee thirty (30) days prior notice of Company's intent to make any changes to the Commission Plan. In the event that Company shall make modifications to the Commission Plan rates, they shall be incorporated within this Exhibit C and shall be binding upon Employee.

**MacuHealth:**

- **$2.00 (two dollars) per bottle on Base Sales defined as follows:**
  - Base sales are defined as the minimum number of bottles sold in each quarter before Growth Commission (see below) is applied. To establish the base sales of your territory we will take the actual units sold by quarter in 2014. These numbers will become the minimum number of bottles you need to sell in a given quarter in 2015 in order start receiving Growth Commission. *An Example of how 2015 Base Sales are calculated below:*

| 2014 Actual Unit Sales | | | |
|---|---|---|---|
| Q1 - 2014 | Q2 - 2014 | Q3 - 2014 | Q4 - 2014 |
| 600 Bottles | 800 Bottles | 750 Bottles | 700 Bottles |
| 2015 Base Sales Units | | | |
| Q1 - 2015 | Q2 - 2015 | Q3 - 2015 | Q4 - 2015 |
| 600 Bottles | 800 Bottles | 750 Bottles | 700 Bottles |

  - Since commission on base sales will be paid monthly, quarterly base sales will be further broken down by the number of selling days in each month for 2015. This will allow you to track your progress. *Example Q1, 2015 would be further broken down as follows:*

| Monthly Break Down of 2015 Q1 Base Sales = 600 Bottles | | | |
|---|---|---|---|
| January 2015 -20 work days | February 2015 -19 work days | March 2015 – 23 work days | Total Q1 Base Sales Units |
| 194 | 184 | 222 | 600 |

  - You will receive $2.00 for every bottle sold each month with no minimum or maximum.

| Commission Payable for Actual Monthly Unit Sales in Q1 2015 | | | | |
|---|---|---|---|---|
| Example 1 | January | February | March | Total Q1 |
| Actual Units Sold | 250 | 150 | 300 | 700 |
| Base Commission Payable | $500 | $300 | $600 | $1,400 |
| Example 2 | | | | |
| Actual Units Sold | 200 | 150 | 200 | 550 |
| Base Commission Payable | $400 | $300 | $400 | $1,100 |

*(Note commission payments are made in the last pay period of the next month so January commission will be paid at the end of February)*

<u>DD</u>   Initial

- Growth Commission of $4.00 (four dollars) per bottle (an additional $2.00 per bottle over base commission) calculated as follows:
  - o  Growth Commission is paid out once per quarter.
  - o  It is paid one month in arrears in the last pay period of the month.  For example - *Q1 Growth commission will be paid at the end of April.*
  - o  Paid for every bottle sold in your territory above your quarterly Base Sales number.
  - o  In the 2 examples above here is how your Growth Commission is calculated:

| | Growth Commission Calculation for Q1 2015 based on examples above | | | | |
|---|---|---|---|---|---|
| | Q1 Base Unit Goal | Q1 Actual Units Sold | Q1 Actual Growth Units Sold | Q1 Growth Commission @ $4.00 per bottle | Total Q1 Base and Growth Commission Payable |
| Example 1 | 600 Bottles | 700 Bottles | 100 Bottles | (100 x $4) =$400 | $1,600 |
| Example 2 | 600 Bottles | 550 Bottles | -50 Bottles | $0 | $1,100 |

## SightRisk:

- SightRisk  is a new cloud based product expected to be released during mid 2015. It is an assessment tool used by the ECP to pre-screen patients for increased risk of blindness later in life. The SightRisk report makes clear and simple recommendations for the ECP to counsel their patients on modifiable lifestyle changes that can reduce this risk. SightRisk also provides the ECP a protocol for ongoing patient management based on risk level and should increase MacuHealth sales penetration in the practice.
- SightRisk is sold as a three year obligation and then must be renewed before the end of the third year.
- Each initial sale of SightRisk and subsequent renewal of the program will result in $300.00 (three hundred dollars) commission payable.

## Macu-AREDS with Zinc:

- Macu-Areds with Zinc will not be a promoted or strategic product for the company. However there may be some ECP's that will only prescribe based on the standards of care as set out resulting from the ARED's II study. This study recommends Zinc as part of the supplementation plan.  In addition there indications based on genetic testing where zinc is also recommended to be more effective slowing the progression of AMD.

 Initial

- In both of these cases we have created a product called Macu-AREDS that is prescribed as an additive along with our primary product MacuHealth. When this situation occurs you will have the ability to solve the objections of an ECP or the individual needs of a specific patient.
- Macu-AREDS with Zinc will have a <u>flat rate commission payable of $0.50 (fifty cents) per bottle sold.</u>

3.   <u>Benefits:</u>

     During the Employment Term, the Employee shall be entitled to participate in all of the benefits generally made available to employees of the Company with titles and responsibilities comparable to those of the Employee, as are in effect from time to time in accordance with the terms and conditions of each such plan (it being understood that nothing herein shall preclude the Company from changing such plans and programs for employees generally).

4.   <u>Expenses:</u>

     The Employee shall be reimbursed for all authorized travel and other out-of-pocket business expenses properly incurred during the Employment Term by the Employee in the performance of the Employee's duties under this Agreement.  The Employee shall furnish to the Company appropriate receipts, statements, and vouchers for all such expenses.  Such reimbursements shall be made in accordance with the Company's then prevailing policy and practice for its employees relating to reimbursement.

 Initial

# Attachment No. 2

## Court Explorer

| ✏ Register of Actions | | | ← Go Back |
|---|---|---|---|

| **Case Number** | 2019-176739-CB | **Entitlement** | MACUHEALTH DIST INC vs. DAVIS RAQUEL |
|---|---|---|---|
| **Judge Name** | MARTHA D. ANDERSON | **Case E-Filed** | YES |
| **Case Filed** | 09/20/2019 | **Case Disposed** | 00/00/0000 |

| Date | Code | Desc |
|---|---|---|
| 10/17/2019 | MPS | MIFILE PROOF OF SERVICE FILED |
| 10/17/2019 | SUM | P/S ON SUMMONS FILED 10/12/19 |
| 10/03/2019 | SI | SUMMONS ISSUED |
| 10/03/2019 | MPS | MIFILE PROOF OF SERVICE FILED |
| 09/19/2019 | C | COMPLAINT FILED /BUS CT |

*Showing 1 to 5 of 5 records*