UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MacuHealth Distribution, Inc., *et al.*,

      Plaintiffs/Counter-Defendants,

v.                                     Case No. 19-13322

Raquel Davis,                       Sean F. Cox
                                              United States District Court Judge

      Defendant/Counter-Plaintiff.
_____/

## OPINION AND ORDER
## ON MOTIONS IN LIMINE

The claims in this consolidated civil action stem from Raquel Davis's prior employment

with a company, MacuHealth Distribution, Inc. ("MacuHealth"), and her alleged interactions

with Chief Operating Officer Frederic Jouhet during her employment, and Davis's alleged

actions following the end of her employment. The following claims are scheduled to proceed to

jury trial in this case on June 14, 2022: 1) MacuHealth/Jouhet's claims for breach of contract,

unfair competition, and unjust enrichment; and 2) Davis's sexual harassment and retaliation

claims. The matter is currently before the Court on the parties' motions in limine. The parties

have briefed the issues and the Court concludes that oral argument is not necessary. For the

reasons that follow, this Court:

    1)     DENIES MacuHealth's motion titled "Lay Witness Opinion Testimony"
           (ECF No. 36), that asks the Court to preclude Davis from presenting
           expert opinion testimony from Heidi Taugher;

    2)     DENIES WITHOUT PREJUDICE MacuHealth's motion titled "Motion in
           Limine – Back Pay" (ECF No. 37), which asks the Court to preclude
           Davis from presenting evidence of her Optos earnings for the purpose of
           calculating back pay, but the evidence be allowed for proving the offset

1

against any award of back pay;

3)   DENIES MacuHealth's motion titled, "Hostile Work Environment" (ECF No. 38), that asks the Court to preclude Davis from presenting evidence of a hostile work environment not previously presented at her deposition;

4)   DENIES WITHOUT PREJUDICE MacuHealth's motion titled "Motion In Limine – Front Pay" (ECF No. 39), which asks the Court to preclude Davis from presenting any evidence or request for front pay contrary to her deposition testimony;

5)   DENIES WITHOUT PREJUDICE MacuHealth's motion titled "Motion In Limine – Optos Income" (ECF No. 40), which asks the Court to preclude Davis from presenting evidence of earnings from Optos/Actos in contradiction of her unambiguous, undisputed testimony; and

6)   GRANTS Davis's sole motion in limine (ECF No. 52), but only to the extent that it seeks to preclude MacuHealth and Jouhet from introducing evidence of Davis's alleged flirtatious behavior and/or personality and past sexual conduct, because they failed to bring a motion seeking to do so under Fed. R. Evid. 412.  This motion is DENIED WITHOUT PREJUDICE in all other respects.

## BACKGROUND

On or about June 19, 2019, Plaintiff MacuHealth filed suit against Defendant Raquel Davis ("Davis") in state court, asserting the following claims: 1) "Breach of Contract" (Count I); 2) "Unfair Competition" (Count II); and 3) "Unjust Enrichment" (Count III).  Davis removed the matter to federal court, based upon diversity jurisdiction, and the case was assigned Case Number 19-13322.

On March 16, 2020, Davis filed her Answer and Affirmative Defenses, along with the following counter-claims asserted against MacuHealth and its Chief Executive Officer, Frederick Jouhet ("Jouhet"): 1) "Unlawful Harassment in Violation of the FEHA" asserted against both MacuHealth and Jouhet; 2) "Failure To Prevent Harassment In Violation of the FEHA," asserted against MacuHealth; 3) "Unlawful Retaliation in Violation of Title VII" asserted against

2

MacuHealth and Jouhet; 4) "Wrongful Termination in Violation of [Michigan's] Public Policy," asserted against MacuHealth; 5) "Breach of Contract," asserted against MacuHealth and Jouhet; 6) "Waiting-Time Penalties Pursuant to Labor Code § 203," asserted against MacuHealth and Jouhet; 7) "Sex Discrimination In Violation of The Elliot-Larsen Civil Rights Act," asserted against MacuHealth; and 8) "Retaliation In Violation of The Elliott-Larsen Civil Rights Act," asserted against MacuHealth.  (ECF No. 8).

On July 30, 2020, the parties stipulated and agreed to consolidate this case with Case Number 20-11430, a case that was transferred to this Court from the United States District Court for the Eastern District of California.  (ECF No. 16 in Case No. 19-13322).

The "Order Of Consolidation" issued in both Case Number 19-13322 and Case Number 20-11430 ordered that "case 19-13322 is consolidated with civil number 20-11430 for all purposes, including trial."  (ECF No. 8 in Case No. 20-11430 & ECF No. 17 in Case No. 19-13322).  It further ordered that "all subsequent papers filed after the date of this order shall be entered on civil number 19-13322" and ordered Case Number 20-11430 closed for administrative purposes.  (*Id.*).

In Case Number 20-11430, Davis asserted the following claims against MacuHealth and Jouhet, along with ten unidentified "John Doe" Defendants: 1) "Unlawful Harassment in Violation of the FEHA," asserted against MacuHealth, Jouhet, and the "John Doe" Defendants; 2) "Failure to Prevent Harassment in Violation of the FEHA," asserted against MacuHealth; 3) "Unlawful Retaliation in Violation of Title VII" asserted against MacuHealth, Jouhet, and the "John Doe" Defendants; 4) "Wrongful Termination in Violation of [California's] Public Policy" asserted against MacuHealth; 5) "Breach of Contract," asserted against MacuHealth, Jouhet, and

3

the "John Doe" Defendants; and 6) "Waiting-Time Penalties Pursuant to Labor Code § 203," MacuHealth, Jouhet, and the "John Doe" Defendants. (ECF No. 1 in Civil Action No. 20-11430).

In addition, MacuHealth and Jouhet asserted the following counter-claims against Davis in Case Number 20-11430: 1) "Breach of Contract;" 2) "Violation Of California Uniform Trade Secrets Act," 3) "Violation Of California Penal Code, § 502;" 4) "Conversion," 5) "Violation Of California Business & Professions Code, § 17200 *Et Seq*.;" 6) "Unfair Competition," and 7) "Unjust Enrichment."  (ECF No. 2 in Civil Action No. 20-11430).

The docket reflects that the deadline for filing dispositive motions in this consolidated case was August 15, 2021 (*see* ECF No. 22) and that discovery was extended until September 14, 2021.  (*See* ECF No. 24).

Significantly, no dispositive motions were filed in this case by either party.  Thus, none of the claims asserted in this case were dismissed during the dispositive-motion phase of this litigation.

The docket reflects that Davis never sought to file an amended complaint[1] in order to identify any of the "John Doe" Defendants. The docket also reflects that none of the claims in this consolidated action have been voluntarily dismissed by the parties.

This Court's Scheduling Order (ECF No. 15 at 6), and Rule 16.2 of the Local Rules for the United States District Court for the Eastern District of Michigan, provide that the parties

---

[1]Just one business day prior to the Joint Final Pretrial Conference, and more than a year after the Court's deadline for filing an amended complaint, MacuHealth and Jouhet filed a motion seeking leave to file an amended complaint in order to assert a new claim – a claim under *Michigan's* Trade Secrets Act – although they had already asserted a claim under California's Trade Secrets Act.  This Court denied that motion.  (ECF No. 29).

must submit a joint final pretrial order that includes several specific items – including a statement of all claims asserted by the parties.  Local Rule 16.2(a) further provides that the Joint Final Pretrial Order submitted by the parties "shall provide for the signature of the Court and, when signed and filed in the Clerk's Office, becomes an order of the Court, superseding the pleadings and governing the course of trial unless modified by further order."  Local Rule 16.2(a).  For failure to "comply strictly with the terms of the joint final pretrial order, the Court may" take a number of actions, including "dismiss claims."  Local Rule 16.2(c).

Here, the parties submitted a Joint Final Pretrial Order that was entered in this consolidated action on December 14, 2021.  (ECF No. 34).  Notably, the portion of that order that identifies the claims asserted against Davis by MacuHealth and Jouhet only identifies breach of contract, unfair competition, and unjust enrichment claims.  (*Id.* at PageID.825-26) (Plaintiffs are "suing for breach of contract, unfair competition and unjust enrichment").  And the portion of the order that identifies the claims asserted against MacuHealth and Jouhet by Davis only identifies sexual harassment and retaliation claims.  (*Id*. at PageID.826) ("This is a sexual harassment and wrongful retaliation case.").

Given the above, this Court issued a Show Cause Order wherein it ordered the "parties to SHOW CAUSE, in writing**,** no later than January 17, 2022, why all claims not included in the Joint Final Pretrial Order should not be dismissed from this action with prejudice."  (ECF No. 65).

In response to that order, MacuHealth and Jouhet agreed that both parties should be limited to the claims identified in the Joint Final Pretrial Order but asserted that the Court should also recognize that it has "preserved its claim for injunctive relief."  (ECF No. 66 at 2).  It is

well-established, however, that injunctive relief is a remedy – not an independent cause of action. *Goryoka v. Quicken Loan, Inc*., 519 F. A'ppx 926, 929 (6th Cir. 2013). A request for injunctive relief "is only cognizable when paired with some recognized cause of action." *Jarbo v. Bank of New York Mellon*, 587 F. A'ppx 287, 290 (6th Cir. 2014). As such, if MacuHealth prevails as to its claims that are proceeding to trial, it may request injunctive relief from the Court with respect to those claims.

In response to the Court's order, Davis stated that she "withdraws all her claims arising under California law," including "the FEHA claims," and also withdraws her claims against the "John Doe" Defendants. (ECF No. 67 at 2). But Davis also asserted that "her instant action for trial includes her Title VII and Elliot-Larsen Civil Rights Act claims for wrongful termination, sex discrimination, and retaliation against MacuHealth and/or Frederic Jouhet" "and her breach of contract claims" against them. (*Id*.). Davis offered no explanation as to why she did not include breach of contract claims in the Joint Final Pretrial Order. Davis offered no legal authority in support of her position that she can proceed to trial on claims that she failed to include in the Joint Final Pretrial Order.[2]

In an Order issued on January 19, 2022, this Court held that the following claims were waived by the parties, by virtue of their not having included them in the Joint Final Pretrial Order, and dismissed them with prejudice: Davis's "Failure To Prevent Harassment In Violation of the FEHA" claims; Davis's "Unlawful Harassment in Violation of the FEHA" claims; Davis's "Wrongful Termination In Violation of Public Policy" claims, under both Michigan and

---

[2]And, in response to this Court's order, Davis did not file a motion asking the Court to amend the Joint Final Pretrial Order.

6

California law; Davis's "Breach of Contract" claims; Davis's "Waiting-Time Penalties Pursuant

to Labor Code § 203" claims; MacuHealth/Jouhet's "Violation of California Uniform Trade

Secrets Act" claims; MacuHealth/Jouhet's "Violation of California Penal Code § 502" claims;

MacuHealth/Jouhet's "Conversion" claims; and MacuHealth/Jouhet's "Violation of California

Business & Professions Code, § 17200 *Et Seq*." claims.  (ECF No. 68).

Accordingly, the following claims are the only claims that are proceeding to a jury trial in

this case:  1) MacuHealth/Jouhet's claims for breach of contract, unfair competition, and unjust

enrichment; and 2) Davis's sexual harassment and retaliation claims

## ANALYSIS

This Court ordered that all motions in limine were to be filed by December 29, 2021.

The parties filed six[3] motions in limine, that are addressed below.

## I.    MacuHealth's "Motion In Limine – Lay Witness Opinion Testimony" (ECF No. 36)

Davis's April 20, 2021 Witness list identified Heidi Taugher as a witness that she may

call at trial stating:

> 3.      Heidi Taugher, LMFT
> 1002 River Rock Dr., Ste 221
> Folsom, CA 9563
>
> Mrs. Heidi Taugher is a licensed therapist that treated Ms. Davis for
> emotional trauma. She may provide *Rule 702 professional expert opinion
> testimony* on medical services she provided to Ms. Davis, and other matters
> as it relates to this case. Mrs. Heidi Taugher was not retained or specifically
> employed for purposes of this litigation; her duties do not regularly include

---

[3]Prior to the Joint Final Pretrial Conference, MacuHealth and Jouhet filed one motion in limine that addressed a number of issues.  (ECF No. 33).  At the Final Pretrial Conference, this Court directed that separate motions must be filed.  Thereafter, MacuHealth and Jouhet filed separate motions in limine, replacing the motion filed as ECF No. 33.  As such, the Court denies the motion filed as ECF No. 33 as moot.

providing testimony. See Rule 26(a)(2)(B).

(ECF No. 20 at 2) (emphasis added).[4]

As this Court's opinion and order in a prior case explained, there are two types of experts

that are addressed in Fed. R. Civ. P. 26 and different obligations are associated with each:

Rule 26 governs when disclosed experts must provide a written report regarding their opinions. Fed. R. Civ. P. 26(a)(2)(A)-(C). There are two types of experts addressed in Rule 26:

First, if an expert has been retained or specially employed to provide expert testimony, or the individual is one whose duties as the party's employee regularly involves giving expert testimony, an expert report is required. This report must be written, prepared and signed by the expert witness. Fed. R. Civ. P. 26(a)(2)(B). The report must contain a complete statement of all expert opinions, including the basis and reasons for each opinion, "facts or data" considered by the expert in forming the opinions, exhibits the expert will use to summarize or support opinions, the expert's qualifications including publications authored in the previous 10 years, a list of cases during previous 4 years in which the witness testified as an expert at trial or deposition, and a statement about the amount of the expert's compensation. Fed. R. Civ. P. 26(a)(2)(B). These disclosure requirements may be modified by agreement or court order. Fed. R. Civ. P. 26(a)(2)(B).
Second, if the expert is not required to provide a written report under Federal Rule 26(a)(2)(B), the offering party must still disclose the subject matter on which the witness is expected to present evidence under Fed. R. Evid. 702, 703, or 705, and provide a summary of the facts and opinions to which the witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(C).

Federal Trial Handbook Civil § 5:4. Expert disclosures, (4th ed.).

*A.A. v. Walled Lake Consol. Schools*, 2018 WL 1790169 at * 2-3 (E.D. Mich. 2018).  Parties

often disagree as to whether those obligations have been complied with in a given case.

---

[4]The Joint Final Pretrial Order also identifies Heidi Taugher as a witness that Davis may call at trial.  (ECF No. 34 at 10).

Here, MacuHealth's motion in limine is titled "Lay Witness Opinion Testimony" (ECF No. 36) but it asks this Court to preclude Davis "from presenting expert opinion testimony from Heidi Taugher." (*Id*. at 6 & 8).

This motion does not claim that Davis was required to submit an expert report from Taugher, or that she should be precluded because she failed to provide such a report or make the required disclosures referenced above. Rather, the motion asserts that Taugher should not be allowed to testify as any kind of expert, because *Taugher said* she was not going to testify as an expert, and that Taugher should not be allowed to testify as a lay witness. It states that "[a]s a lay witness, Ms. Taugher may not offer opinion testimony 'based on scientific, technical, or other specialized knowledge within the scope of Rule 702.' FRE 701." (*Id*. at 2).

This motion states that "[r]ather than go to the expense of deposing Ms. Taugher, Plaintiff's counsel contacted her informally to ascertain her qualification as an expert and the nature of her testimony." (*Id*. at 7). The motion attaches an e-mail from Taugher to MacuHealth's counsel that states: "I hope this email finds you well. To answer your question about my testifying, I am not considered an 'expert witness'. If called to testify, it will be in my capacity as a therapist and I will be accompanied by my own counsel." (ECF No. 36-2). It is not clear if MacuHealth's counsel contacted Taugher by telephone or by e-mail. If that e-mail from Taugher was a response to an e-mail from Mr. Henke, the motion does not attach it.

In response to this motion, Davis states that Taugher *is not being called as a lay witness*. (Davis Response at 4) (MacuHealth's attempt to make Mrs. Taugher a 'lay witness' fails."). Davis contends that Taugher is being called as an expert under Fed. R. Evid. 702 because she is a treating healthcare provider. Davis asserts that "MacuHealth has Ms. Davis's treatment record

with Ms. Taugher – containing the summary and subject-matter of the Rule 702 evidence – which was produced during discovery."  (*Id*. at 5).  Davis directs the Court to *Fielden v. CSX Transp., Inc*., 482 F.3d 866 (6th Cir. 2007).

As such, this Court concludes that MacuHealth has not established that Davis should be precluded from calling Taugher as an expert at trial and denies this motion.

## II.    MacuHealth's "Motion in Limine – Back Pay" (ECF No. 37)

In Davis's counterclaim (ECF No. 8) and her complaint from Case No. 2:20-cv-11430, she alleges that she suffered damages that entitle her to backpay.  Specifically, in Davis's Unlawful Retaliation in Violation of Title VII claims in both her counterclaim and the complaint from Case No. 2:20-cv-11430, she alleges that she "suffered and continues to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof." (ECF No. 8 at PageID. 268); (ECF No. 1 at PageID. 19).  In Davis's Sex Discrimination in Violation of the Elliot-Larsen Civil Rights Act ("ELCRA") claim, she alleges that she "suffered and continues to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof."  (ECF No. 8 at PageID. 281).  Finally, in Davis's Retaliation in Violation of the ELCRA claim, she alleges that she "has suffered injuries and damages, including but not limited to, potential loss of earnings and earning capacity; loss of career opportunities . . . ." (ECF No. 8 at PageID. 283).

In MacuHealth's motion, it argues that by Davis's calculations, "damages would be based on income earned from an employer other than [MacuHealth]."  (ECF No. 37 at PageID. 902). MacuHealth argues that "[a] proper calculation of back pay would be based on what [Davis] would have earned in [MacuHealth's] employment, less what she actually earned from

other sources." (*Id*. at PageID. 903). MacuHealth requests that the Court preclude Davis "from presenting evidence of earnings at Optos for the purposes of showing what she would have earned but for the discrimination, but that the evidence be admissible to show what she actually earned from other sources for purposes of computing the offset." (*Id*. at PageID 904).  In response, Davis argues that she should "be permitted to present her entire damages case." (ECF No. 60 at PageID. 1659).

Back pay "is money awarded for lost compensation during the period between the date of the plaintiff's injury (i.e., the date on which the discriminatory course of conduct began) and the date on which the damages are determined." *Szeinbach v. Ohio State University*, 820 F.3d 814, 820 (6th Cir. 2016).  The purpose of back pay "is to make whole the victim of an unlawful employment practice by restoring the employee to the position he or she would have been in absent the discrimination." *Howe v. City of Akron*, 801 F.3d 718, 744 (6th Cir. 2015).  Back pay is one of the remedies available under Title VII:

> If the court finds that respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, **the court may** enjoin the responded from engaging in such unlawful employment practice, and **order such affirmative action as may be appropriate, which may include**, but is not limited to, **reinstatement or hiring of employees, with or without back pay (payable by the employer**, employment agency, or labor organization, as the case may be, **responsible for the unlawful employment practice**), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

42 U.S.C. § 200e-5(g) (emphasis added).  However, the statute "says nothing about how to calculate the amount that the responsible employer must pay." *Szeinbach*, 820 F.3d at 823.

The Sixth Circuit has held that "[t]he appropriate amount of back pay is calculated by comparing (1) the amount the plaintiff actually earned while being subjected to the employer's discrimination, and (2) the amount that the plaintiff would have earned in the absence of any discrimination." *Id.* (citing *Howe v. City of Akron*, 801 F.3d 718, 745 (6th Cir. 2015)).  Back pay "should completely redress the economic injury the plaintiff has suffered by encompassing the salary any raises that the plaintiff would have received, as well as any sick leave, vacation pay, pension benefits and other fringe benefits she would have received but for discrimination." *Szeinbach*, 820 F.3d at 82.  The Sixth Circuit has explicitly held that "[i]mposing arbitrary restraints on this process (such as by limiting the available employment opportunities solely to those offered by the culpable employer) would frustrate this goal and prevent the courts from truly making the plaintiff 'whole.'"  *Id.* at 824.

However, "back pay must be limited to actual damages and proved with reasonable certainty."  *Id.* at 821. (citing *McMahon v. Libbey-Owens-Ford Co.*, 870 F.2d 1073, 1079 (6th Cir. 1989).  The burden is on the plaintiff to prove her entitlement to back pay and establish the appropriate amount with reasonable certainty. *Id.* "If the plaintiff fails to offer such proof, then an award of back pay is not warranted."  *Id.*

MacuHealth argues that "if the alleged wrong had never been committed, [Davis] would never have worked for Actos/Optos" and therefore, Davis's "Actos/Optos earnings would be relevant only to show an offset, not as a basis of calculating what [Davis] would have earned, but for the alleged discrimination."  (ECF No. 37 at PageID. 903).  However, MacuHealth does not support this assertion with any authority.

12

Again, no dispositive motions were filed in this case.  The Court has not had the benefit of reviewing exhibits filed for a motion for summary judgment.  Davis has not yet had the opportunity to demonstrate whether she is entitled to backpay and the appropriate amount of backpay, which may include "fringe benefits" such as other employment opportunities.  *See Szeinbach*, 820 F.3d at 82 ("Assuming for the sake of the argument that Szienbach did have a firm offer of employment from a university other than OSU, and assuming OSU's allegedly illegal conduct resulted in the withdrawal of that offer, then the appropriate measure of back pay would be the difference between (1) what Szeinbach actually earned at OSU, and (2) what Szeinbach would have earned while working for the other university.").

Trials are dynamic, and a district court should grant a motion to in limine "only when that evidence is clearly inadmissible on all potential grounds."  *Palmer v. Allen*, 2017 WL 218077 at*1 (E.D. Mich. Jan. 19, 2017) (quoting *Ind. Ins. Co. v. GE*, 326 F. Supp.2d, 844, 846 (N.D. Ohio 2004)).  Here, Davis has specifically alleged that she suffered "potential loss of earnings and earning capacity; loss of career opportunities." (ECF No. 8 at PageID. 283).  MacuHealth has not met the high standard for a motion in limine regarding Davis's Aptos/Optos earnings, and the Court concludes that the evidentiary ruling on the issue "should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in a proper context." *Palmer*, 2017 WL 218077 at *1.

For all of these reasons, the Court denies this motion without prejudice.

## III.   MacuHealth's "Motion In Limine – Hostile Work Environment" (ECF No. 38)

Again, Davis's section of the Joint Final Pretrial Order in this case identified only sexual harassment and retaliation claims being asserted by her.  (ECF No. 34 at PageID.826)  Davis's

response to this motion in limine appears to reflect that her claim is, at least in part, a hostile

work environment claim that is based on sexual harassment:

> Hostile work environment harassment is that which creates an [sic] adverse work
> conditions, including unwelcome sexual comments, advances, touching, gestures,
> or any conduct, based on gender, that interferes with the employee's work
> performance.  *See, e.g., Vance v. Ball State University*, 133 S. Ct. 2434, 2439
> (2013); *Havrill v. Westward L.L.C.*, 433 F.3d 428 (5th Cir. 2005).

(Davis's Response Br., ECF No. 61, at 2).

Davis's response to this motion proceeds as if this motion seeks to dismiss this claim or

prevent her from proceeding with this claim at trial.  (*Id*. at 1) (Arguing Davis should not be

preventing "from presenting her case to a jury" and that her "pleadings and testimony

demonstrate that her hostile work environment claims are properly before the Court for trial.").

*If* MacuHealth were asking this Court to dismiss Davis's sexual-harassment-based hostile

work environment claim in its motion in limine, that would not be appropriate.  That is because a

motion in limine has a limited purpose –  "to exclude anticipated evidence before the evidence is

actually offered'" at trial. *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting

*Luce v. United States*, 469 U.S. 38, 40 n.2, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984)).  A motion in

limine cannot be used to make summary-judgment arguments that a party failed to make during

the course of the case.  *Id*. at 563 (Explaining that where a motion in limine "is no more than a

rephrased summary-judgment motion, the motion should not be considered.").

While this motion in limine does suggest that this claim fails because "Davis has

produced utterly no evidence of a hostile work environment," this motion in limine does not ask

the Court to dismiss Plaintiff's claim or prevent Davis from proceeding to trial on that claim.

Rather, this motion asks that the Court preclude Davis "from presenting evidence of a hostile

work environment not produced during discovery." (ECF No. 38 at 3). The motion asserts that

"[w]hen asked at her deposition to identify anything that would show that a hostile work

environment existed in 2018, when she left her employment, [Davis] only had three complaints:

(1) her car allowance was not paid, (b) she did not get a raise in 2018 and, (c) e-mails from

Frederick Jouhet were shorter." (*Id*. at 2). In other words, this motion asks the Court to preclude

Davis from testifying about other facts and circumstances that she experienced during her

employment, that she failed to identify during her deposition, that would support her hostile

work environment claim based on sexual harassment. And it also appears to go even further than

that – as it asks the Court to preclude Davis "from offering any testimony, *evidence, or argument*

of a hostile work environment that has not been produced during discovery." (*Id*. at 3)

(emphasis added).

      MacuHealth's brief asserts that Davis gave limited deposition testimony when asked

about the facts and circumstances that support her belief that Jouhet acted "hostile toward her:"

| | |
|---|---|
| Q. | Anything else? |
| A. | From July to August? |
| Q. | Right. |
| A. | I feel there was a hostile work – I felt like Mr. Jouhet was being hostile towards me. |
| Q. | Really? How so? |
| A. | Well, in Europe and – yeah. So I'm talking from July to August, specifically. |
| Q. | I'm just waiting for an answer. |
| A. | I already said my answer. |
| Q. | Did you? You haven't given me anything. How was Mr. Jouhet hostile to you in July and August of 2018? |
| A. | That is my answer. |
| Q. | It's not an answer. Is there a single text message which shows any hostility from Mr. Jouhet to you? |
| A. | If you look – if you look at all the text messages from the beginning to the end – |
| Q. | There you go. |

A.          – and everything, you can –

Q.          Show me. Show me a single text message in that 136 pages
            that references any hostility.

A.          Are you going to let me finish? If you look at all the text
            messages from the beginning to the end, you can kind of
            notice that towards the end, his text messages are kind of
            shorter.

Q.          And that is hostile how?

A.          No. Not the text messaging itself. It's what was behind that.
            The text was just a little sign. A small – a slight evidence of
            that.

Q.          Show me a single text message that references any hostility.

A.          I already answered that.

Q.          No. Show me. You've got 136 pages. Point them out.

A.          I already answered that. I said the – the facts if you look
            through from the beginning to the end – toward the end, the
            text were just shorter, which was indicative of – of what was
            happening.

Q.          If there an email where he expresses any hostility towards
            you?

A.          I don't know.

Q.          Anything help you remember?

A.          I don't know.

. . . .

Q.          You allege in your Deposition Exhibit Number 10, your
            answers to interrogatories, that after February 5th of 2017,
            which was the waste management tournament, that you
            believe Mr. Jouhet started acting hostile; is that right?

A.          Yes.

Q.          And do you want to read that to doublecheck or are you good
            with your answer?

A.          No. I'm good.

Q.          Okay. What exactly did Mr. Jouhet say to you that you
            believe was hostile?

A.          It was a combination of –

Q.          I didn't ask about the combination. Was there anything he
            said to you that you believed was hostile?

A.          I would need to look at, you know, the things, like texts and
            everything, but what I recall – anything that – okay. To
            answer your question specifically, anything that he said to me
            –

Q.          Said to you.

A.          – that – that I – cannot remember right now what or when he
            said something that – that I'm – that I can say, okay, this was –

16

was hostile.  I know that after – after the beginning of 2017, especially after that meeting that we had in Arizona that I had the meeting with him in regards to taking the product to Brazil.  And I – and I told a few coworkers that I – that I had a boyfriend and everything.  After that, he started being more hostile towards me and how do I know that?  By looks, by being shorter on texts, by – by things like that. By not giving me a salary – you know, continued to not giving me a salary raise.

   By things like that.  It's a combination of things.  I cannot point to one specific thing. Oh, he said this and that was – that was hostile.  It's – it's things that happened in a – in a prolonged period of time.

Q.        Okay. So –

A.        That's hard to pinpoint to one – to one thing specific.

(Davis Dep. at 73-74 & 158-59).  MacuHealth asks that Davis be precluded "from presenting evidence of a hostile work environment not previously presented at her deposition."  (ECF No. 38 at 10).

Notably, this line of questioning during Davis's deposition was directed at Davis's assertion that Jouhet acted "hostile toward her" after he learned that she had a boyfriend.

A sexual harassment hostile work environment claim under the ELCRA, however, is not based upon allegations of generalized anger or hostility expressed toward an employee – its based upon allegations about sexual harassment.

Michigan's ELCRA "prohibits employers from discriminating against employees based on sex, which includes sexual harassment." *Kalich v. AT&T Mobility, Inc.*, 679 F.3d 464, 469 (6th Cir. 2012).  "Michigan law defines 'sexual harassment' as 'unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature' under circumstances where submission to the conduct or communication is made a 'quid pro quo' of gaining or keeping employment or where the conduct or communication 'has the

17

purpose or effect of substantially interfering with an individual's employment....' Mich. Comp.

Laws § 37.2103(I)." *Id.*   "Sexual harassment that substantially interferes with an individual's

employment is referred to as 'hostile work environment' harassment."  *Kalich*, 679 F.3d at 470.

The cited portions of Davis's deposition testimony referenced by MacuHealth in its brief

did not inquire about any allegations about actual sexual harassment (ie, unwelcome sexual

advances, physical contact, etc.).

In addition, MacuHealth's motion only attached portions of Davis's deposition transcript.

There may be other portions that are relevant to Davis's hostile work environment claim.  And

Davis may have be able to present evidence other than her own testimony.

MacuHealth has not directed the Court to any legal authority to support its request that,

because of Davis's deposition testimony about how she believes Jouhet "acted hostile towards

her" after learning she had a boyfriend, the Court should preclude her from presenting any

evidence in support of her sexual-harassment-based hostile work environment claim at trial.

Moreover, to the extent that Davis gives trial testimony that conflicts or differs from her

deposition testimony, that can be highlighted at trial by MacuHealth during cross-examination.

For all of these reasons, the Court denies this motion.

## IV.    MacuHealth's "Motion In Limine – Front Pay" (ECF No. 39)

In MacuHealth's motion, it argues that Davis's claim for lost earning capacity damages

should be limited to what she testified to during her deposition.  (ECF No. 39 at PageID. 1067-

1070).  Specifically, MacuHealth seeks that Davis "be precluded from presenting a claim for

front pay not disclosed during discovery of in her deposition."  (ECF No. 39 at PageID. 1067).

18

MacuHealth directs the Court to "Defendant Raquel Davis's Statement of Damages" (ECF No. 39-5).  In Davis's Statement of Damages, she states that her damages include a total of $630,000 in economic loss.  (*Id*., at PageID. 1102).  Davis testified during her deposition that:

> I calculated $130,000 from mid 2018 to mid of 2019, for the one year that I was unable to secure a job. And from my lost wages at - - and for the lost wages at Macuhealth and for what my wages would be had I continued to grow - - to grow the territory at the pace that I was growing. So $130,000 for that. And then 300,000 for 2020 that I was unemployed for the entire year after being terminated from Actos. And 300,000 is, again, these territories, they - - they have to grow from year after year. And with that, grows your salary. So 300,000 for that. And then for half of this year that I was, again, continued being unemployed and unable to secure a job, I put in 200,000, which is about half of what I was making at Actos, plus a little bit of that incurred. And that equals to 130,000 - - that equals to 6 - - 630,000.

(ECF No. 39-2 at PageID. 1080).  From this, MacuHealth takes the position that "[h]aving disclosed no claim for front pay, [Davis] should be precluded from presenting evidence of such a claim at trial."  (ECF No. 39 at PageID. 1069).

Davis responds that she "should be permitted to present her entire damages case" and that "front pay remains an active issue at bar."  (ECF No. 62 at PageID. 1737).

"Front pay is 'money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement.' "  *Szeinbach*, 820 F.3d at 820 (citing *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001).  "Just as back pay is compensation for the period between an act of unlawful discrimination and the date of judgement, so front pay is simply compensation for the post-judgement effects of past discrimination."  *Shore v. Federal Exp. Corp.*, 42 F.3d 373, 378 (6th Cir. 1994).

The Sixth Circuit has held that "reinstatement is the presumptively favored equitable remedy."  *Roush v. KFC Nat. Management Co.*, 10 F.3d 392, 398 (6th Cir. 1993).  However,

reinstatement is not appropriate "where the plaintiff has found other work, where reinstatement would require displacement of a non-culpable employee, or where hostility would result." *Id*.

"No per se rule governs the appropriateness of front pay damages in a particular case . . . Ultimately, the question to be answered is whether front pay damages are needed in a particular case to make the plaintiff whole." *Arban v. West Pub. Corp.*, 345 F.3d 390, 406 (6th Cir. 2003) (quoting *Wilson v. Int'l Bro. of Teamsters*, 83 F.3d 747,756-57 (6th Cir. 1996)). "Several factors must be considered from determining the propriety of an award of front pay, including an employee's duty to mitigate, the availability of employment opportunities, the period of within which one by reasonable efforts may be re-employed, the employee's work and life expectancy, the discount tables to determine the present value of future damages and other factors that are pertinent on prospective damage awards." *Id*.

Here, neither party has made an argument as to whether front pay is an appropriate remedy for Davis. MacuHealth merely argues that Davis did not present evidence during discovery as to front pay (ECF No. 39 at PageID. 1069), and Davis merely states that front pay is still an issue (ECF No. 62 at PageID.1737).

MacuHealth has not directed the Court to any legal authority to support its request that the Court should preclude evidence of front pay damages because Davis's deposition testimony did not include a calculation of front pay. This is insufficient to meet the high standard for the Court to preclude evidence of front pay in a motion in limine. Davis's current employment situation is unclear. If she is working elsewhere and reinstatement is not an appropriate equitable remedy in her situation, then front pay may be appropriate. The evidentiary ruling on this matter is better deferred "until trial so that questions of foundation, relevancy, and potential

prejudice may be resolved in a proper context." *Palmer*, 2017 WL 218077 at *1. To the extent

that Davis gives trial testimony that conflicts or differs from her deposition testimony, that can

be highlighted at trial by MacuHealth during cross-examination.

      For all of these reasons, the Court denies this motion without prejudice.

**V.**    **MacuHealth's "Motion In Limine – Optos Income" (ECF No. 40)**

      In MacuHealth's motion, it seeks that Davis be precluded "from presenting evidence of

earnings from Optos or Actos in contradiction of her unambiguous testimony." (ECF No. 40 at

PageID. 1154). MacuHealth cites Davis's tax returns that she produced for her deposition,

which identify her total compensation from 2015-2018. (*Id*., at PageID. 1152). MacuHealth also

states that Davis "testified unequivocally that she made $225,000 in 2019 working for Actos."

(*Id.*, at PageID. 1152). MacuHealth directs the Court to the following portions of Davis's

deposition:

> A.    My salary at Actos was 225,000.
> Q.    Your salary was $225,000?
> A.    My compensation.
> . . . .
>
> Q.    So you said lost wages at Actos. Did you actually earn $225,000 in the six
> months that you were at Actos?
> A.    Not for the entire six months. I earned for, I think it was four - - four
> months because they do - - not because I was performing, but because they
> provide - - they provide what they call - - they provide what's called commission
> guarantee.
> . . . .
>
> Q.    So there is a W2 or a 1099 to you from Actos for $225,000?
> A.    Correct. Yes.

(ECF No. 40-2 at PageID. 1162-1164).

MacuHealth's position is that this testimony regarding Davis's "income at Actos/Optos seriously undermines any argument that she lost income as a result of her resignation from [MacuHealth's] employment." (ECF No. 40 at PageID. 1153).

Davis responds that she "should be permitted to present her entire damages case." (ECF No. 63, at PageID 1756). Davis does not specifically mention her testimony regarding her Actos/Optos income.

MacuHealth does not direct the Court to any legal authority that the Court should preclude Davis from presenting evidence of earnings from Actos/Optos in contradiction of this testimony. This is insufficient to meet the high standard for the Court to preclude evidence in a motion in limine. The evidentiary ruling on this matter is better deferred "until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in a proper context." *Palmer*, 2017 WL 218077 at *1. To the extent that Davis gives trial testimony that conflicts or differs from her deposition testimony, MacuHealth can highlight it at trial during cross-examination.

For these reasons, the Court denies this motion without prejudice.

## VI.   "Davis's Motion In Limine To Exclude Propensity And Rule 412 Evidence" (ECF No. 52)

Davis filed just one motion in limine. In it, Davis asks this Court to "exclude all testimony, opinions and the documents referencing Ms. Davis as a religious zealot, or 'flirtatious,' along with any other use of past sexual conduct, as evidence at trial, pursuant to Federal Rules of Evidence 404(a), 412, and 403." (ECF No. 52 at 1). Notably, this motion asks the Court to make that ruling without identifying any specific testimony, or any specific documents, she seeks to preclude. Her motion attaches no exhibits. The most Davis does is

direct the Court to three pages of the Joint Final Pretrial Order (ECF No. 34, PageID.831-833)

and assert that what is in those pages "reveal[s] a desire to present inadmissible propensity

evidence, at trial."  (Davis's Motion at 1).  In those pages, MacuHealth/Jouhet list various

witnesses they may call at trial including the following, which presumably are the ones Davis is

referencing:

> 2.    Diyan Dzahristos (Hermiz):
>
>> Diyan Dzahristos and other identified sales representatives have information concerning Davis's *flirtation and drunken behavior at trade shows*; *Davis's referral to others as "sweeties", "honey" and "baby*," and the changes in her behavior and demeanor from 2017 and prior to 2018.
>> . . . .
>
> 4.    Employees and Former Employees or Associates of MacuHealth:
> . . . .
>> All can testify as to *Davis's conduct and demeanor towards Jouhet and other MacuHealth representatives at trade shows*, which will support Defendant/Counter-Plaintiff's position that at no time did Jouhet harass Davis, take any retaliatory actions against Davis, or direct any retaliatory actions against Davis.
>> . . . .
>
> 6.    John Nolan
> . . . .
> Professor John Noal has information relating to Davis confronting him in Hawaii, San Francisco, and Ireland; statements about Jouhet that Davis made to him; and Davis's *transmission of inappropriate Bible passages and text messages* to him.

(Joint Final Pretrial Order, PageID.831-33).

### A.    Evidence Of Davis's Faith

First, Davis's motion seeks to preclude evidence of her religious faith.  Her motion states

that Fed. R. Fed. Evid. "404(b) provides that evidence of 'other crimes, wrongs, or acts is not

admissible to prove the character of a person to show action in conformity therewith.'  Fed. R.

Evid. 404(b). MacuHealth and Frederic Jouhet should not be permitted to raise inadmissible

propensity evidence of Ms. Davis's faith under Rules 402, 403, and 404." (Davis's Motion at 2-3).  The motion does not further explain this request and, therefore, does not explain how or why Plaintiff believes evidence of her faith should be precluded under Rule 404(b). Plaintiff also fails to explain how evidence concerning her faith would be relevant to the issues that will be presented at trial.  As such, this portion of the motion is denied without prejudice.

### B.    Evidence of Davis's "Flirtatiousness" Or Sexual Behavior

Davis's motion also asserts that MacuHealth "seeks to use statements about Ms. Davis's alleged prior acts as circumstantial proof that she was asking to be sexually harassed by MacuHealth's CEO.  No evidence can support the proposed use here." (Davis's Motion at 3).  She contends that some, unspecified evidence, should be precluded under Fed. R. Evid. 404(a). (*Id*. at 3-4).

Davis also asserts that any evidence of her sexual past and flirtatious behavior should be precluded under Fed. R. Evid. 412.  (Davis's Br. at 4).

Rule 412(a) provides that the "following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct: 1) evidence offered to prove that a victim engaged in other sexual behavior; or 2) evidence offered to prove a victim's sexual predisposition.  Fed. R. Evid. 412(a).  But there exceptions and "[i]n a civil case, the court may admit evidence offered to prove a victim's sexual behavior or sexual predisposition if its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." Fed. R. Evid. 412(b)(2). In addition, the Court "may admit evidence of a victim's reputation only if the victim has placed it in controversy."  (*Id*.).

Significantly Rule 412 includes a specific "Procedure to Determine Admissibility" that is

set forth in subsection (c):

    (c) Procedure to Determine Admissibility.

    (1) Motion. If a party intends to offer evidence under Rule 412(b), the party must:

        (A) file a motion that specifically describes the evidence and states the purpose for which it is to be offered;

        (B) do so at least 14 days before trial unless the court, for good cause, sets a different time;

        (C) serve the motion on all parties; and

        (D) notify the victim or, when appropriate, the victim's guardian or representative.

    (2) Hearing. Before admitting evidence under this rule, the court must conduct an in camera hearing and give the victim and parties a right to attend and be heard. Unless the court orders otherwise, the motion, related materials, and the record of the hearing must be and remain sealed.

Fed. R. Evid. 412.

    As explained by the Second Circuit, Rule 412's "protection 'aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process.'" *Wolak v. Spucci*, 217 F.3d 157, 160 (2d Cir. 2000) (quoting Advisory Committee Notes to 1994 Amendments). "Rule 412, which explicitly includes civil cases involving sexual misconduct, encompasses sexual harassment lawsuits" like this case. *Wolak*, 217 F.3d at 160. And Rule 412 encompasses far more than a plaintiff's prior sexual acts:

    Defendants contend that even assuming Rule 412 generally applies to sexual harassment, it does not apply here, because "[t]here were no questions about [Wolak's] sexual behavior or predisposition." The Advisory Committee Notes, however, explain that "behavior" encompasses "activities of the mind, such as

25

> fantasies." *See also Sheffield*, 895 F.Supp. at 108 (noting that Rule *412's ban on sexual predisposition evidence includes matters " 'relating to the alleged victims's mode of dress, speech, or lifestyle'* ") (quoting Advisory Committee Notes).

*Id.* (emphasis added); *see also Glazier v. Fox*, 2016 WL 827760 at *4 (D.V.I. 2016). (concluding that evidence regarding the plaintiff's mode of dress and her allegedly flirtatious behavior implicates Rule 412).

Davis's motion asserts that testimony or other evidence regarding her alleged "flirtatious" behavior or personality is covered by Rule 412 and should be precluded.

In response, MacuHealth and Jouhet assert that evidence of flirtatious conduct can be admitted under Fed. R. Evid. 412 and direct the Court to *Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848 (1st Cir. 1997), which is attached to their brief.  In that case, the district court held that evidence concerning the plaintiff's allegedly flirtatious behavior toward a man named Miranda was admissible under Rule 412 to determine whether Miranda's advances were in fact "unwanted." *Id*. at 856.  The district court in *Glazier* also admitted evidence of a plaintiff's flirtatious behavior under Rule 412, after conducting a balancing test of the probative value of that evidence versus the danger of unfair prejudice*.  Glazier, supra*, at *5-6.

Thus, *Rodriguez-Hernandez* and *Glazier* show that evidence of the flirtatious behavior of a plaintiff asserting a sexual harassment claim may be admitted under Rule 412.  The problem for MacuHealth and Jouhet, however, is that they have not brought a motion[5] under Rule 412 seeking to admit such evidence at trial, as was done in those cases, and *as is expressly required under the rule.*

---

[5]They did not file a motion prior to the motion-in-limine deadline, nor did they seek leave to file such a motion after the trial date was changed to June.

26

Accordingly, while evidence of Davis's flirtatious conduct might be relevant, and could possibly be admissible under Fed. R. Evid. 412, the evidence cannot be admitted in this case because MacuHealth and Jouhet failed to bring a motion seeking to present such evidence. *See, e.g., Perry v. Taco Bell Corp.*, 2009 WL 10698754 at *2 (Finding that the defendant waived any possible opportunity to introduce evidence of the plaintiff's sexual behavior under Rule 412 because it failed to file a motion at least fourteen days prior to the trial date). The Court grants Davis's motion, to the extent that it rules that evidence and testimony regarding Davis's allegedly flirtatious behavior and/or personality is precluded, as is evidence of her sexual past.

### C.    Other Evidence

Davis's motion fails to specify any other evidence she seeks to preclude under Rule 412, and MacuHealth's response references other evidence that may or may not be implicated by Rule 412, such as Davis having referred to Jouhet by "corazon" or heart, and inviting him to her church for a weekend so that he could be healed. The motion is denied without prejudice as to this evidence. The Court will make any necessary rulings regarding the admission of such evidence during the course of trial, as such rulings are better deferred "until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in a proper context." *Palmer*, *supra*.

### CONCLUSION & ORDER

For the reasons set forth above, the Court **ORDERS** that:

1)    MacuHealth's motion titled "Lay Witness Opinion Testimony" (ECF No. 36) is **DENIED**;

2)    MacuHealth's motion titled "Motion in Limine – Back Pay" (ECF No. 37)

is **DENIED WITHOUT PREJUDICE**;

3)      MacuHealth's motion titled "Hostile Work Environment" (ECF No. 38) is **DENIED**;

4)      MacuHealth's motion titled "Motion In Limine – Front Pay" (ECF No. 39) is **DENIED WITHOUT PREJUDICE**;

5)      MacuHealth's motion titled "Motion In Limine – Optos Income" (ECF No. 40) is **DENIED WITHOUT PREJUDICE**;

6)      Davis's sole motion in limine (ECF No. 52) is **GRANTED**, but only to the extent that it seeks to preclude MacuHealth and Jouhet from introducing evidence of Davis's alleged flirtatious behavior and/or personality and past sexual conduct, because they failed to bring a motion seeking to do so under Fed. R. Evid. 412. This motion is **DENIED WITHOUT PREJUDICE** in all other respects; and

7)      The motion in limine filed as ECF No. 33 is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  May 20, 2022

28